May it please the Court, good morning. I'm Jeffrey Baird, representing William White. This is a D-A-N-A case, which means there's drug addiction and alcoholism involved. ALJ even diagnosed substance-induced mood disorder and ongoing alcoholism. When there's D-A-N-A involved, the ALJ has to follow a special procedure set forth in the Bustamante case by this Court. That is, the ALJ has to consider all of the impairments together first. And if she finds disability, then she makes an effort, possibly with a medical expert, to separate out the effects of the D-A-A. Mr. Baird, I thought you were probably asking the same question I'm asking. Go ahead. Why do we get to that when the ALJ didn't find disability? Well, my argument is she made a mistake not finding disability the first time. Maybe we should just focus on that. Right. Well, that's what we're going to do. Notice her quote. Most striking is his claim that alcohol had nothing to do with his claims of increased depressive symptoms, etc. Then she outlines four instances of suicidal gestures or attempts, each resulting in hospitalization. But isn't that, as I remember that passage, it struck me that that's in the context of finding inconsistencies and discussing credibility. Am I wrong? You're correct. But it also shows that every few months he has these suicidal events that result in hospitalization. My argument is that shows disability when you consider all the impairments together. So she needed to go through everything together once. I think those instances alone established disability. They would under Social Security ruling 8515. And they would under the VE zone testimony that even missing one day a month or some sort of irregularity would knock out the unskilled world of work. It would really help me to hear your best argument about this credibility determination and why you think that was or was not adequately supported. Right. He's got credibility problems. A lot is associated with the drug addiction and alcoholism. The medicine that shows, the medical events that show the suicidal gestures, the suicidal attempts speak for themselves no matter what his contradictory statements. Generally speaking, he's trying to hide his substance abuse. He may have comorbid impairments of bipolar disorder, major depression, anxiety, but he's trying to hide the extent of his drug abuse. So that makes him, in a sense, not credible. But he's credible to the extent that he's establishing disability in the first phase of Bustamante. Moreover, the credibility assessments are not just general shooting galleries. In the Varney case long ago, this court said the ALJ has to isolate specific subjective claims and test those against evidence. That's also in the Lester case, specific subjective claims. And there's at least one very important here. He said he couldn't leave the house for almost a year or for a year at one point. The lay witness, which the ALJ ignored, also said he stayed in the house for a long time. The ALJ should have isolated that specific subjective claim and said, okay, I know he's full of Blarney on the drug abuse, but did he have to stay in the house for a year? She never did that. She never rejected that specific limitation. She never rejected that specific subjective claim, that testimony. She didn't isolate it and show evidence why it wasn't true. In fact, she did the opposite. She ignored the lay testimony that said it is true. I'm his wife. He spent a year in the house. And again, under SSR 8515, that would knock out the unskilled world of work. Also, under the VE zone testimony, it would knock out the world of unskilled work. Too many absences, too unreliable in attendance. So the lay testimony turns out to be pretty important because it tends to confirm that particular subjective claim. If we apply the Stout rule, which obviously I like, if that specific subjective claim were credited as true, any reasonable ALJ would say, okay, if that's true, it knocks out the unskilled work world. That would mean the error is harmful, that the ALJ should not have passed over in silence the lay witness testimony. Have we ever applied Stout that way? Yeah. That's how Stout would apply. Stout was a lay witness. This type of testimony? It was lay witness testimony. It was lay witness testimony which established limitations the ALJ didn't otherwise reject. And in fact, although I haggle with this Court's Molina holding, you could read Molina as supporting my claimant. In Molina, if the ALJ has rejected a specific limitation, then subsequent evidence of that limitation can also be rejected by inference. I assert that's exactly what the medieval church did to Galileo. Aristotle established that the sun went around the earth. Therefore, any evidence to the contrary can be rejected. But even if we accept Molina, the lay witness did establish or did testify to an additional subjective claim, an additional limitation. He had to stay in the house for a year. She also supports the claim he can't afford his medications all the time. He runs out of insurance. And there's the stray issue of the cane. She observed he relies on a cane. That's important because the VE said if you rely on a cane, you can't do the jobs I've just identified. So the lay witness has important information that the ALJ should have given germane attention to. She did not. That error is harmful. Well, I will reserve. Oh, yes. Assuming that we agree with you, and obviously I'm not saying I do before I hear the counterargument, but assuming we do, is the remedy that we would remand on an open record to the ALJ? And, in other words, would the ALJ be able to take other evidence if the ALJ wanted to? Well, if I was advising you, I'd say that's the proper remedy, that there's open questions, there's harmful error, there should be remanded for further proceedings to go through Bustamante twice, to address the lay witness testimony, to obtain additional updated records. I'm also a zealous advocate for my claimant, and I can point out that under Schneider, when the ALJ screws up on the lay witness testimony, credit is true. If credit is true that the claimant couldn't leave the house for a year and that he relied on a cane, that knocks out the jobs, that knocks out the unskilled work load. So that would be a pay claim. So let me ask you a question about, so if we determined that the ALJ's adverse credibility finding was not supported by substantial evidence, do we remand and instruct the ALJ to take his testimony as true? Well, under the credit is true rule in Varney, yes. And it's been re-supported in Garrison, the recent case on credit is true. That rule, though, is somewhat up for grabs and dispute. I'm aware of that. More important is the – I wrote an opinion, not in the Social Security case, but in an immigration case called Soto Alarte that suggested that in the normal case we would not credit as true. I understand the – If you took 100 Social Security cases, I don't know what our circuit has done overall on that. It's an open question at this point. The government can still appeal Garrison and try to knock out credit as true all the way. If you were to remand, I think it would have to be a de novo review, an opportunity for a de novo hearing, and a reinvestigation entirely of all of the credibility of all the witnesses and all the doctors. That would probably be a sound remedy choice for the court. It would sort of have to, given the Bustamante issues. Right, given the Bustamante issues. It would have to be other hearing. I'll reserve the rest of my time if I need to respond to my opponent. That's been Judge Wardlaw, Judge Christin. Yep. You don't have immediate questions? I just wanted to note, I'm having trouble hearing Judge Gould right now. If they could do something up there to make his mic louder. Thank you. Good morning. May it please the court, Jeff Staples on behalf of the commissioner who would ask that you affirm the district court's judgment upholding the ALJ's decision. There's no need to reach remedy issues in this case because the ALJ's decision is free from harmful error, and I think that's primarily what Mr. White is getting at with the discussion of Stout and Molina. In the Supreme Court case of Shinseki v. Sanders, which came between Stout and Molina, the Supreme Court noted that courts must be applying harmless error analysis to administrative cases, and the McLeod case in the Ninth Circuit held that that analysis was applicable to Social Security cases as well as VA cases. There is no discrepancy between Stout and Molina. There's no need to resolve these in any way that narrows or broadens either of the cases because Molina lays out the way that Stout applies. In Social Security cases, they're all very fact-specific. You have to take into account the facts of each case before making a harmful error determination. In Stout, the court was presented with a case where the lay witness statement was uncontradicted. It was consistent with all the medical evidence, and it presented limitations that the ALJ had not considered. In Molina, in an attempt to harmonize the Sanders case with Stout, the court said that, yes, in those instances, the court needs to conclude that that's a harmful error when those are the facts of the case. However, in cases like this one, where the unaddressed lay witness's testimony is describing no limitations beyond what the claimant himself described, and where the ALJ provided legally sufficient reasons for rejecting the claimant's testimony, then- Well, I guess I have a question for you there. And Judge Wardlock, can you hear me now? I can hear you better, yes. Thank you. Okay, I'll try to project here. Okay, I understand that if a claimant says, I have a backache, or I have a hearing problem, or some medical problem, that a lay witness who's a spouse, who basically parrots or repeats the same points that may be discredited, that might be a harmless error. But if a wife in this case says the guy never left the house for a year, why is that the kind of testimony that could be viewed as a harmless error? Because it's somewhat independent of whatever the guy said. Well, the distinction between just parroting what the claimant said, I think that was in Mr. White's brief, the idea that, no, this lay witness is just repeating what the claimant told her. Whereas if she offers independent observations, then that doesn't fall under the same analysis. That was the dissent's point in Molina. That was what the dissent wanted the rule to be. But isn't that exactly the point about why it matters what kind of lay testimony we're applying the Stout and Molina rule to? If the witness is a next-door neighbor and is really repeating information that came from the claimant, that's one thing. But if the witness has an independent reason to have made the observations, that's quite another, isn't it? I don't think that the majority opinion in Molina made that distinction. But doesn't it make sense to you? It does make sense to me, and it made sense to the dissent. But that's not the law. Okay, so I appreciate your response. But it seems there's a further complication here because all of this rests on the premise that the claimant has lacked credibility. It's why I said it would really be helpful for me to hear the answer to that question. That seems to me to be very pivotal here. Yes. First of all, the credibility issue was waived because Mr. White did not raise it at the district court. What if we disagree with you about that? If you could just assume and then. To the extent it's not waived, I think that it's essentially conceded in Mr. White's reply brief where he details a number of inconsistent statements that he made on the record, and the ALJ is permitted to rely on a claimant's inconsistent statements in making an adverse credibility determination. Were all of those inconsistent statements inconsistencies between the written record and claimant's testimony? Yes. He, for instance, denied using drugs and then received a positive tox screening. He testified he had three to four anxiety attacks a week when the record showed he only had two panic attacks in his life. He testified that his depression kept him from working where the record documented numerous instances of mood improvement with medications. He testified he. So that's an example of what I found when I looked through the record. If you could just back up to that last example. How are those inconsistent? He's got some mood improvement with medication. How is that inconsistent with not being able to work due to depression? Well, that's not the exact inconsistency that the ALJ noted, but an ALJ is permitted to consider improvement with medication in making the credibility determination. I thought you were just going through a list of bullet points of inconsistencies that ALJ noted. Am I incorrect in understanding what you're listing for me? I'm noting general inconsistencies in the record, but as for the inconsistent statements, I think it was the statements about drug use and the statements about anxiety attacks. Those are the ones you think the ALJ relied upon? Yes. And then the ALJ also relied upon improvement with medication. The ALJ relied upon Mr. White's activities of daily living.  I understood his testimony to be that he suggested that I'm on this medication because it sort of keeps me calm. That he testified that it was an improvement for him, a help to him. Yes. How is that inconsistent? Because he also testified that his depression was disabling, and if he's doing better than he suggested on the medications, the record is continually documenting he's feeling better, he's not feeling as depressed, then those are factors that an ALJ can consider in the credibility determination. To the extent there was error in the ALJ's consideration of that issue, the ALJ provided several other clear and convincing reasons. Okay, so what are the strongest? What are the strongest inconsistencies from your perspective going to credibility? I would say the strongest are denying using drugs versus having a positive tox screening at that very same appointment. His testimony that he can't walk more than a few blocks versus his ability to walk a mile twice per day. These are the kinds of inconsistencies that certainly supported the ALJ's reasoning, as did other evidence of failure to comply with treatment, but I think those are the strongest pieces of evidence that Mr. White was not credible. And they were conceded in the reply brief. Excuse me for interrupting. Sorry. I didn't mean to. Is the failure to comply with treatment, it sounds like from your brief that you don't contest that if he couldn't afford it, that's not an issue for credibility. But are you referring to now the testimony that he attended one physical therapy appointment and there wasn't a written record to document that? That's certainly one. But in that case, counsel, there wasn't any evidence in the record either way. He attended one. There's no evidence that he didn't attend more. There's no evidence that he did attend more. So I don't know how you can find an adverse credibility thing from that. He testified that he attended only one physical therapy session at the hearing. No. That's at transcript 61 to 62. Okay. And so is your point that, because I read the record the way Judge Wardlaw read it, which is we don't know if he did or not in terms of documentary evidence. Yes. But is your point that you think it supports an adverse credibility determination because he would have sought more treatment if he was in pain? Yes. Is that what you're getting at? Yes. Okay, that seems to me to be qualitatively different than what I first understood you to say. So forgive me if I sound nitpicky, but I'm only trying to understand your argument here. No, these are important distinctions. I think there's both improvement with medications as to the depression issue, and then there's also another inconsistency in terms of he's alleging disabling physical impairments but then not going to physical therapy. Was there any indication that he could afford physical therapy, or is that part of what he and his wife said they couldn't afford? I don't recall any testimony about being able to afford physical therapy, but his testimony as to why he didn't go to more physical therapy is because he didn't believe it would work. And so the ALJ in her decision found that not compelling, which was a reasonable determination. There's also instances of him taking his family's medication, taking too many medications, and those would not be undermined by his inability to afford medications. So the record demonstrates that the ALJ's adverse credibility determination was supported by substantial evidence. How does taking family medication support an adverse credibility determination, please? Because he's not taking his medications as prescribed. He's taking too many of them. He's taking his family's medication. This is not what doctors are telling him to do. Okay, well, so it means he may not be a very compliant patient, but I'm trying to figure out how it seems to me that that can cut both ways. You could say he's taking family medication perhaps because he's continuing to be in pain. You could decide that he's taking medication that belongs to somebody else because he's a drug addict. You can make a lot of inferences for that. You're drawing an adverse credibility determination, so can you help me figure out how you're getting there? Well, the question is not are there reasonable explanations for this, for Mr. White's behavior. The question is was the ALJ reasonable in finding that this was an adverse credibility factor? Well, I'm trying to figure out whether that finding is supported, but I'm failing to see how the evidence that he took his family's medicine supports it. Can you help me with that, please? I would just say that it's basically evidence that he's non-compliance is a credibility factor that ALJs may consider, and this court has held that. So I think that that by itself is a valid credibility reason. Thank you. Again, to the extent there was error in the ALJ's reliance on that reason, there's several others. And because the ALJ's adverse credibility determination was supported by substantial evidence, the ALJ's failure to discuss Mr. White's wife's testimony, which we concede was error, was a harmless error. And Molina describes why that's the case. Finally, the D, A, and A point. The fact is that there's no – a Bustamante error occurs when an ALJ, instead of doing the two-stage analysis, just factors out all of the evidence related to the claimant's drug abuse or alcoholism in the first go-through. That's an error. In this case, the ALJ didn't do that because the ALJ didn't omit any limitations, even considering Mr. White's drug abuse and alcoholism, any limitations that were credible. So although Mr. White testified to various limitations, he wasn't credible. Dr. Hunt, however, an examining physician, extensively considered Mr. White's alcoholism, diagnosed substance abuse as an impairment, considered the records of his hospitalizations due to alcohol-related suicide attempts, and nevertheless concluded that he could perform full-time work within the restrictions that the ALJ delineated in the RFC finding. So because the ALJ didn't reject any credible evidence, merely because it was based on Mr. White's alcoholism, this is not a Bustamante error and, therefore, does not require remand. Unless this Court has any further questions, I'd ask you to affirm the District Court's judgment. Thank you. Well, there's kind of a pernicious way of looking at credibility here. The concept is, incredible in general, then incredible specifically. That's what we don't know. There's a lot of drug addiction, alcohol abuse going on. Dr. Hunt wrote in November of 2009, but by January of 2010, there was another suicidal event or gesture, and he was hospitalized again. The frequency of those events, there was four hospitalizations in 21 months, suggest, considering all the impairments together, there's disability. Then you have to go through and try to separate it out, separate out the DAA with presumably the help of a medical expert, and that's what the ALJ didn't do. That's a harmful Bustamante error. Could I ask you one question on the negative credibility decision? Yes. A number of the points don't have much weight in my mind, but what about the fact that he testifies that he can't walk much, or he's got that limit, but he walks his dogs two miles a day. Isn't there a conflict there? There is, except the walking the dogs two miles a day was earlier than the hearing, so he might have been worse with his ankle arthritis by the time of the hearing. So that could be a situation that changed over time. But even if he was inconsistent in that, what does that have to do with his wife saying, you know, he had to stay in the house for all year? I mean, there's specific claims that need to be discredited, and the ALJ didn't do that. She attacked him generally as a man of bad character, an unreliable reporter, but she didn't deal with specific subjective claims. That's a specific instance, though, this walking the dog. That's pretty specific. Do you know how much earlier it was that the record showed that he was able to walk? I believe that was at the state agency review stage. He told that to Dr. Bush. When did he see Dr. Bush? I don't have that date on hand, Your Honor. I apologize for that. That would be the date. I don't mean to say he's making consistent statements. He makes a lot of inconsistent statements. Counsel also indicated when I asked him what were the strongest inconsistencies for his client's perspective, and he said there was denying using drugs on the same day he had a positive talk screen. That's true. What can you tell me about that? He had a positive talk screen. He was using methamphetamines, et cetera. So does that support opposing counsel's position? It means that my client, in general, I think he has a lot of inconsistent statements throughout the record. But the question is what is the specific subjective claims that are at stake here? At this point, he just has to show with the drug addiction and alcoholism, I can't sustain substantial gainful activity. If he shows that, then the Bustamante procedures require a second go-around by the ALJ, hopefully with a medical expert. But his specific claim that he didn't leave the house much for a year was supported independently by the lay witness, his wife, who made that observation. So that seems like a very strong particular subjective claim, even if he misused the family medications, even if he misled his doctors about the extent of his drug abuse that was going on. So the ALJ, in fact, used the drug abuse against him as a credibility factor, rather than accepting it first as an impairment that might limit substantial gainful activity. And that's what she needed to do under Bustamante. There's one last point. How functional is he after these suicidal events? In the September 2008 gesture, afterward, when he was clean, his GAF was rated at 40, which would indicate impairment in reality testing. So he's being released, but there's still some residual. There's something still going on. It's enough of an extra question to remand under Bustamante. Okay, thank you, counsel. Thank you. Unless there are questions from the judges. I think we've reached the end of that one. The case of White v. Goldman shall be submitted, and we thank counsel on both sides for your fine argument.
judges: WARDLAW, GOULD, CHRISTEN